STATE OF WEST VIRGINIA

SUPREME COURT OF APPEALS

FILED

December 30, 2015
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

CAMERON NRC, LLC,
Employer Below, Petitioner

vs.)    No. 14-0699 (BOR Appeal No. 2049105)
              (Claim No. 2013005624)

LINDA ASHBY,
Claimant Below, Respondent

MEMORANDUM DECISION

Petitioner Cameron NRC, LLC, by Jillian L. Moore, its attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Linda Ashby, by Jonathan C. Bowman, her attorney, filed a timely response.

This appeal arises from the Board of Review's Final Order dated June 24, 2014, in which the Board affirmed a December 13, 2013, Order of the Workers' Compensation Office of Judges. In its Order, the Office of Judges reversed the claims administrator's October 24, 2012, decision that found a lumbar sprain to be compensable but held that intervertebral disc herniation without myelopathy at the L4-5 level was not a compensable condition. The Office of Judges found that both the lumbar sprain and the intervertebral disc herniation without myelopathy at the L4-5 level were compensable conditions. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Ms. Ashby, a nurse for Cameron NRC, LLC, was attempting to hoist an elderly patient on August 18, 2012, when she injured her lower back. According to the record, Ms. Ashby had a series of non-work-related lower back issues. An April 20, 2004, MRI revealed a large left paracentral disc extrusion at L5-S1 with compression of the traversing left S1 nerve root. On May 11, 2004, Ms. Ashby underwent a partial hemilaminectomy on the left at L5, partial

1

hemilaminectomy on the left at S1, partial medial facetectomy on the left at L5-S1, foraminotomy on the left at L5-S1, and excision of disc herniation on the left at L5-S1. In his post-operative diagnosis report Ronald Hargraves, M.D., noted a herniated nucleus pulposus on the left L5-S1. On May 21, 2005, Ms. Ashby was seen at the emergency room of Wheeling Hospital with complaints of low back pain radiating down the right leg after lifting a grill into a van. It was not work related. The impression was back pain, sciatica and right Sl joint tenderness. On January 31, 2006, Ms. Ashby was seen with complaints of left shoulder and low back pain after slipping on a wet plastic ground cover. This was also not work related. The diagnosis was contusion of the left shoulder and low back. On October 10, 2007, Ms. Ashby was seen with complaints of lower back pain. She bent over and felt a pop in her lower back, which was not work related. The records indicate it was difficult to examine due to her pain. On March 22, 2009, Ms. Ashby reported to Wheeling Hospital with complaints of lower back pain after getting out of bed. X-rays showed no fracture or dislocation. On July 2, 2012, Ms. Ashby was seen at Wheeling Hospital for a bone density scan. It was regarded as normal.

After her August 18, 2012, injury, Ms. Ashby underwent an MRI. The August 21, 2012, MRI revealed disc desiccation from L3-4 through L5-S1, disc bulging at L3-4, a midline disc herniation with associated radial tear at L4-5, stenosis at L4-5, and a disc bulge with superimposed left paracentral disc herniation and associated radial tear at L5-S1. On September 21, 2012, Ms. Ashby reported to Vincent Miele, M.D., for evaluation. Dr. Miele noted that Ms. Ashby developed low back pain after an injury at work on August 18, 2012. Ms. Ashby had recently experienced an increase in her symptoms after attempting to return to light duty work. Ms. Ashby had low back surgery in 2004 but had been doing well until the work injury of August 18, 2012. Dr. Miele diagnosed her with axial mechanical back pain secondary to a lifting injury at work. Dr. Miele recommended physical therapy and a follow-up with Dr. Hargraves in one month if her symptoms did not improve.

From September 27, 2012, through October 16, 2012, Ms. Ashby reported to Wheeling Hospital Physical Therapy for physical therapy. On October 22, 2012, Ms. Ashby was seen by L. W. DeGarmeaux, D.C. Physical examination revealed tenderness in the right Sl joint and sciatic region. Range of motion was limited approximately 40% in all planes. Dr. DeGarmeaux read the MRI of her lumbar spine as showing a disc herniation at L3-4 and L4-5 with spinal stenosis. On October 23, 2012, Ms. Ashby reported to Terrence Mason, PT, for assessment. Ms. Ashby complained of lower back pain, diminished right lower extremity strength and range of motion, lumbar paraspinal muscle spasms, and decreased tolerances to static posture and activities of daily living. The straight leg raise test was positive on the right. Mr. Mason diagnosed Ms. Ashby with lumbago, disc displacement, and lumbosacral neuritis. He also recommended four weeks of physical therapy. The claims administrator held the claim compensable for a lumbar sprain but denied lumbar intervertebral disc without myelopathy as a compensable component on October 24, 2012. Ms. Ashby protested.

From October 25, 2012, through November 5, 2012, Ms. Ashby had various physical therapy appointments. On December 21, 2012, Dr. DeGarmeaux requested that lumbar disc displacement be added as a compensable diagnosis in this claim. He also requested pain management. In support of his request Dr. DeGarmeaux wrote a letter to the claims administrator

on January 7, 2013. In his letter, Dr. DeGarmeaux noted that Ms. Ashby had not yet rendered any treatment because all of his requests for treatment were denied. He had, however, performed clinical and manual examinations of Ms. Ashby and range of motion studies. Dr. DeGarmeaux opined that attempts should be made to address Ms. Ashby's injuries with conservative treatment in hopes of improving her condition and possibly allowing a return to work. Dr. DeGarmeaux noted that while his requests for pain management had been denied by workers' compensation, he was going to try and get her into pain management using her private health insurance. On January 10, 2013, Ms. Ashby reported to Bill Hennessey, M.D., for an independent medical evaluation. According to Dr. Hennessey, Ms. Ashby took slow, short steps with symptom magnification. She used a cane; however, the cane had not been prescribed by a physician. Dr. Hennessey noted that her range of motion measurements were invalid and consistent with exaggerated pain behavior and symptom magnification. Dr. Hennessey concluded that she had reached her maximum degree of medical improvement and had no ratable impairment. Dr. Hennessey noted that Ms. Ashby had previously undergone surgery at the left L5-S1 level back in 2004. In that regard, Dr. Hennessey concluded that the recent MRI findings of an abnormal disc at the L5-S1 level were actually postoperative findings related to the prior 2004 surgery. Dr. Hennessey noted that this would explain why Dr. Miele did not want to perform surgery on the L5-S1 disc. Additionally, Dr. Hennessey stated that the left-sided findings on the MRI study would not explain Ms. Ashby's right-sided low back pain.

On February 5, 2013, Dr. DeGarmeaux wrote a letter to Ms. Ashby's counsel. Dr. DeGarmeaux noted that he provided chiropractic treatment to Ms. Ashby on six occasions from January 7, 2013, through January 23, 2013. He also noted that he briefly examined her on eleven occasions between August 20, 2012, and January 4, 2013. Dr. DeGarmeaux disagreed with Dr. Hennessey's finding that the MRI of August 21, 2012, showed a "small incidental bulge centrally at L4-5." Dr. DeGarmeaux noted that the MRI of August 21, 2012, was read by Ronald Landau, M.D., as showing a "midline posterior disc herniation at L4-5, a radial disc tear, impingement upon the ventral thecal sac, ligamentum flavum hypertrophy, moderate spinal stenosis and severe impingement upon the bilateral lateral recesses." Dr. DeGarmeaux also disagreed with Dr. Hennessey's opinion that she had reached her maximum degree of medical improvement in regard to her compensable injury. On February 15, 2013, Ms. Ashby underwent another MRI. The MRI revealed multilevel disc bulging, a large left paracentral posterior disc herniation at T10-11, mild ventral cord compression at T10-11, and neural encroachment at T10-11. On February 28, 2013, Ms. Ashby reported to Bruce Guberman, M.D., for an independent medical evaluation. He did note that on May 11, 2004, Dr. Hargraves performed surgery on Ms. Ashby at the L5-S1 level. He also noted that her low back pain resolved after surgery until she injured her low back in 2009 while bending over. Ms. Ashby was off work for about two months and received chiropractic treatment. Ms. Ashby stated that her low back pain from the 2009 injury resolved with chiropractic care. Physical examination revealed range of motion abnormalities in the lumbar spine. Ms. Ashby's gait was antalgic but not unsteady. There was a slight decrease in the left Achilles tendon reflex, but no evidence of lumbar radiculopathy. Dr. Guberman diagnosed Ms. Ashby with an acute and chronic lumbosacral strain and concluded that Ms. Ashby had reached her maximum degree of medical improvement. Dr. Guberman opined that the diagnosis of displacement of intervertebral disc without myelopathy should be added to the claim because Ms. Ashby had been found to have multi-level disc disease on MRI.

3

Additionally, Dr. Guberman noted that Ms. Ashby's prior treating surgeon, who performed a prior discectomy, had indicated that the annular tear at the L5-S1 level was causing her current pain.

On July 15, 2013, Ms. Ashby reported to Christopher Martin, M.D., for an independent medical evaluation. Dr. Martin concluded that she was at her maximum degree of medical improvement. Dr. Martin opined that the structural findings seen on Ms. Ashby's lumbar MRI were not related to the compensable injury. First, Dr. Martin noted that the injury described by Ms. Ashby involved motion of the thoracic rather than lumbar spine. He further noted that the MRI revealed widespread degenerative changes in the lumbar spine except at the L1-2 and L2-3 levels. The widespread nature of the changes indicated that they were caused by age-related degeneration and not an injury. Additionally, Dr. Martin noted that an MRI of Ms. Ashby's lumbar spine performed in 2004 revealed extensive degenerative changes. Dr. Martin opined that all of the imaging findings seen on the 2012 MRI predated the compensable injury. Finally, Dr. Martin noted that the annular tear was in the center of Ms. Ashby's spine and would not cause the right-sided pain reported.

The Office of Judges found that Ms. Ashby suffered a lumbar disc displacement in the course of and as a result of her employment with Cameron NRC, LLC. The Office of Judges examined whether the herniation of the L5-S1 disc should be held compensable. The Office of Judges concluded that the L5-S1 disc herniation should not be held compensable because it pre-existed the August 18, 2012, injury. The Office of Judges noted that both the 2004 and the 2012 MRI scans revealed the L5-S1 disc herniation. The Office of Judges also noted that this opinion was supported by the report of Dr. Martin, the report of Dr. Hennessey, and the decision of Dr. Miele not to operate on that level. The Office of Judges found that the L4-5 herniation was a compensable condition because the 2004 scan did not show a herniation. The Office of Judges also noted that there was not another persuasive explanation for the herniation at that level. Furthermore a herniation at that level was supported by the report of Dr. DeGarmeaux. The Board of Review adopted the findings of the Office of Judges and affirmed its Order.

We agree with the Office of Judges and Board of Review. No previous MRI showed a disc herniation at L4-5. Both Dr. Guberman and Dr. DeGarmeaux believed that the compensable injury caused the herniation at the L4-5 level, while Drs. Hennessey and Martin did not. The Office of Judges relied on the reports of Drs. Guberman and DeGarmeaux because there was no other reasonable explanation as to why the L4-5 disc herniation existed. The Office of Judges, as the trier of fact, was in the best position to determine the weight and credibility of the evidence presented, and because its decision was in agreement with the evidence of record, it should be upheld. The Office of Judges also properly concluded that the L5-S1 disc herniation pre-existed the compensable injury. The MRI taken in 2004 has been interpreted by several physicians to show a herniation at the L5-S1 level. Because the L5-S1 herniation was present prior to the compensable injury, the Office of Judges did not err when it denied adding the condition to the compensable diagnoses.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous

4

conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: December 30, 2015**

**CONCURRED IN BY:**
Chief Justice Margaret L. Workman
Justice Robin J. Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II

**DISSENTING:**
Justice Brent D. Benjamin